# EXHIBIT A

Westlaw.

Not Reported in F Supp 2d                                                      Page 1
Not Reported in F Supp 2d, 2000 WL 1876477 (D Del )
**(Cite as: Not Reported in F.Supp.2d)**

**H**
<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
            United States District Court, D. Delaware
            BRUNSWICK CORPORATION Plaintiff,
                              v
            PRECOR INCORPORATED , Defendant.
                    **No. 00-691-GMS.**

                         Dec. 12, 2000

<u>Robert W. Whetzel</u>, Richards Layton & Finger, of Wilmington, DE, <u>Stephen C. Neal</u>, <u>Linda F. Callison</u>, <u>Jonathan H. Takei</u> and <u>Ricardo Rodriguez</u> of Cooley Godward LLP, Palo Alto, CA, for Plaintiff, of counsel.
<u>Samuel David Brickley, II</u>, Connolly, Bove, Lodge & Hutz of Wilmington, DE, <u>James R. Uhlir</u>, <u>Stephen P. Fricke</u>, <u>Steven V. Gibbons</u>, <u>F. Ross Boundy</u> of Christensen O'ConnorJohnson Kindness, Seattle, WA, for Defendants, of counsel

                *MEMORANDUM AND ORDER*

<u>SLEET</u>, J
**\*1** On August 1, 2000, the plaintiff, Brunswick Corporation, and its division Life Fitness ("Life Fitness") brought this patent infringement action against Precor Incorporated ("Precor"). Life Fitness alleges that Precor is infringing its <u>U.S. Patent No. 6,095,951</u> (" '951 patent") relating to exercise treadmills. Presently before this court is Precor's motion to transfer this case to the United States District Court for the Western District of Washington, pursuant to <u>28 U.S.C. § 1404(a)</u> Because the court finds that a transfer would convenience the parties and the witnesses while serving the interests of justice, Precor's motion to transfer is granted

                      I. BACKGROUND

                       A The parties

Life Fitness and Precor both design, manufacture, and sell exercise equipment and both directly compete with one another in the exercise fitness market Although both parties are incorporated in Delaware, neither party maintains a physical presence (e g , offices or facilities) in this state Life Fitness has its principal place of business in Franklin Park, Illinois and Precor has its principal place of business in Bothell, Washington.

            B Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each other, nor to patent litigation." D.1, 7, at 2. In 1994, Precor filed a patent infringement suit against Life Fitness in the United States District Court for the Western District of Washington ("1994 litigation") At issue in the 1994 litigation were <u>U.S. Patent Nos. 5,599,259, 5,752,897</u> and certain Claims of <u>U.S. Patent No. 5,382,207</u> (respectively the " '259, '897, and '207 patents") The '207 patent is the parent of <u>the '951 patent</u> currently at issue in the case before the court.

In the 1994 litigation, Claims 1-36 of '207 patent were dismissed on summary judgment in February 1996 leaving only claims 37, 38, and 39 at issue. In early September 1999, Life Fitness voluntarily stipulated to the dismissal of the claims for infringement of the '259 and '897 patents as well as Claims 38-39 of the '207 patent As a result of this stipulation, these claims were dismissed with prejudice in an order dated September 23, 1999 *See Precor Inc. v. Life Fitness*, No. C94-1586C (W.D.Wash. Sept. 23, 1999) (stipulation and order of dismissal). Thus, the only infringement claim remaining for trial related to Claim 37 of the '207 patent. In October 1999, Life Fitness lost at trial as to this one patent claim. The judgment from the 1994 litigation is currently on appeal to the Federal Circuit.

                      II. DISCUSSION

Pursuant to <u>28 U.S.C. § 1404(a)</u>, the court may transfer this action to "any other district where it might have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." <u>28 U.S.C. § 1404(a) (1993)</u>. The parties here agree that Life Fitness could have brought this action in the Western District of Washington *See* <u>28 U.S.C. § 1391(b)(1) (1993)</u>. Moreover, this lawsuit could have initially been filed in Washington because it is a patent infringement matter. *See* <u>28 U.S.C. § 1400(b)</u> Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in <u>*Jumara v. State Farm Ins. Co.*, 55 F.3d</u>

© 2006 Thomson/West. No Claim to Orig. U S. Govt. Works

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

873, 879 (3d Cir.1995).

**\*2** In *Jumara*, the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. 55 F.3d at 879-80; *see also Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 196-97 (D.Del.1998).* These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara, 55 F.3d at 879-80.* The court should apply these factors to determine, "on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id.* at 883 (citing *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30-31 (1988)).* The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara.* at 879.

> FN1. The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum) *Jumara, 55 F.3d at 879-880.* The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

A  Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most

pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir.1995).* In this case, however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace, 56 F.Supp.2d 542, 545 (E.D.Pa.1999).* "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen ... a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co., 61 F.Supp.2d 128, 131 (D.Del.1999).* Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

B  Public Factors and the Interest of Justice

**\*3** Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make trial "easy, expeditious, or inexpensive." *Jumara, 55 F.3d at 879.* In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                          Page 3
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

equipment in the Western District of Washington. Where re-
lated lawsuits exist, "it is in the interests of justice to permit
suits involving the same parties and issues to proceed before
one court." *See Liggett Group, Inc. v. R.J. Reynolds To-
bacco Co., 102 F.Supp.2d 518, (D.N.J.2000)* (citations
omitted) Thus, the court finds that transferring this case
would promote the interests of justice.

> FN2. The parties disagree as to whether this is a
> directly related matter.

### III. CONCLUSION.

Finding that the balance of convenience and the interests of
justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's Motion to Transfer is GRANTED;
and

2. This matter shall be TRANSFERRED to the Western
District of Washington.

D.Del.,2000.
Brunswick Corp. v. Precor Inc.
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00691 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2002 WL 31414136 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
IKOS SYSTEMS, INC., Plaintiff,
v.
CADENCE DESIGN SYSTEMS, INC., and Quick Turn
Design Systems, Inc., Defendant.
No. Civ.A. 02-1335-GMS.

Oct. 21, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On July 29, 2002, the plaintiff, IKOS Systems, Inc.
("IKOS"), filed the instant action for patent infringement
against Cadence Design Systems, Inc. ("Cadence") and
Quick Turn Design Systems, Inc. ("Quick Turn")
(collectively "the defendants") IKOS alleges that Quick
Turn's Palladium$^{TM}$ design verification product infringes
United States Patent No. 5,847,578 ("the '578 patent"). The
defendants, move to transfer this case to the United States
District Court for the Northern District of California pursu-
ant to 28 U.S.C. § 1404(a) (D.I.11) For the following reas-
ons, the court will grant the defendants' motion

II. DISCUSSION

Each of the parties in this case is a Delaware corporation
with headquarters located within several miles of one anoth-
er in what is commonly known as the Silicon Valley of
northern California.

> FN1. IKOS is a subsidiary of Mentor Graphics
> Corporation ("Mentor") which is incorporated un-
> der the laws of the State of Oregon. The defendants
> assert that Mentor is the real party in interest in this
> action IKOS does not seem to seriously contest
> this assertion. Nevertheless, given the court's ana-
> lysis and conclusions as to the most appropriate
> forum for the litigation of this matter, the court
> need not reach this issue

The defendants move to transfer this action to the District
Court for the Northern District of California pursuant to 28
U.S.C. § 1404(a). Section 1404(a) provides that "[f]or con-
venience of [the] parties and witnesses, in the interest of
justice," the court may transfer a civil action "to any other
district ... where it might have been brought." 28 U.S.C. §
1404(a) It is the movants' burden to establish the need for
transfer, and 'the plaintiff's choice of venue [will] not be
lightly disturbed ' *Jumara v. State Farm Ins. Co., 55 F.3d
873, 879 (3d Cir.1995)* (citations omitted)

When considering a motion to transfer, the court must de-
termine 'whether on balance the litigation would more con-
veniently proceed and the interest of justice be better served
by transfer to a different forum ' *Id.* This inquiry requires
"a multi-factor balancing test" embracing not only the stat-
utory criteria of convenience of the parties and the witnesses
and the interests of justice, but all relevant factors, including
certain private and public interests. *Id.* at 875, 879. These
private interests include the plaintiff's choice of forum; the
defendants' preference; whether the claim arose elsewhere;
and the location of books and record, to the extent that they
could not be produced in the alternative forum *Id.* at 879.
Among the relevant public interests are: "[t]he enforceabil-
ity of the judgment; practical considerations that could make
the trial easy, expeditious, or inexpensive; the relative ad-
ministrative difficulty in the two fora resulting from court
congestion; the local interest in deciding local controversies
at home; [and] the public policies of the fora " *Id.* at 879-80
(citations omitted).

> FN2. The first three of these private interest col-
> lapse into other portions of the *Jumara* analysis.
> The court, therefore, will consider them in the con-
> text of the entire inquiry only *See Affymetrix, Inc.
> v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,
> 28 F.Supp.2d 192 (D.Del.1998)*

Upon consideration of these factors, the court finds that the
defendants have met their burden of demonstrating that
transfer is appropriate In reaching this conclusion the court
relied on the following considerations, among others: (1)
while the defendants and the plaintiff are Delaware corpora-
tions and should reasonably expect to litigate in the forum,
there seems to be little connection between Delaware and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                             Page 2
Not Reported in F.Supp.2d, 2002 WL 31414136 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

this action or the parties; (2) each party is headquartered in northern California; (3) the parties are large national and international organizations with apparently substantial assets; (4) because the parties maintain geographically diverse operating locations, travel time and convenience in the aggregate would be neither substantially increased nor decreased substantially with a transfer of forum; (5) any disparity in court congestion is not so great as to justify a transfer of venue; (6) while patent disputes are often not properly characterized as "local" in nature or otherwise unique to a particular locale, *see Affymetrix, 28 F.Supp.2d at 207,* the relevant industry, the Electronic Design Automotive Industry, is apparently located in the Silicon Valley. Finally, IKOS has identified six potential witnesses who are not employed by the defendants and reside on the east coast. However, it appears that the majority of the defendants' engineers, as well as other potential witnesses, are located in the Northern District. Thus, the court is convinced that this fact and the other public and private interests are sufficient to tip "the balance of convenience ... *strongly* in favor of [the] defendant[s]." *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)* (emphasis in original)

> FN3. In its brief and an accompanying declaration by Giovanni Mancini, a former employee of the plaintiff, IKOS has identified William R. Beausoleil as a seventh potential non-party employee witness. In his declaration, Mr. Mancini states that the witness elected not to join the defendant, Cadence. In contrast, the defendants offer the declaration of the witness himself. In that declaration, Mr. Beausoleil attests that he entered the employ of Cadence on March 28, 2002. The court will credit Mr. Beausoleil's declaration.

### III. CONCLUSION

*2 For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendants' motion to transfer the case to the United States District Court for the Northern District of California (D.I.11) is GRANTED.

D.Del.,2002.
IKOS Systems, Inc. v. Cadence Design Systems, Inc.

Not Reported in F.Supp.2d, 2002 WL 31414136 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01335 (Docket) (Jul. 29, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                                   Page 1
Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
ALLERGAN, INC. AND ALLERGAN SALES, LLC,
Plaintiffs,
v.
ALCON LABORATORIES, INC., Alcon Research Ltd.,
Alcon Inc., and Bausch & Lomb, Inc., Defendants.
No. C.A. 02-1682-GMS.

Feb. 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On December 16, 2002, the plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), filed the above-captioned action seeking a declaratory judgment against the defendants, Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon, Inc., and Bausch & Lomb, Inc. (collectively "Alcon and B & L"). Specifically, Allergan asserts infringement of its U.S. Patent No. 6,465,464 B2 ("the '464 Patent"). The '464 Patent is based on a continuation application of two Allergan patents asserted in a prior California action.

Presently before the court is Alcon and B & L's motion to transfer this action to the Central District of California, Southern Division. For the reasons that follow, the court will grant this motion.

II. BACKGROUND

Both of the plaintiffs are Delaware entities with their principle place of business in Irvine, California. The defendant Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in Forth Worth, Texas. Alcon Research, Ltd. is a limited partnership organized under the laws of Texas, with Alcon Laboratories, Inc. as a general partner. Alcon, Inc. is the parent of Alcon Laboratories, and is a Swiss corporation headquartered in Hunenberg, Switzerland. Finally, Bausch and Lomb is a New York corporation, with its principle place of business in Rochester, New York.

On January 9, 2002, Allergan filed suit against Alcon and B & L in the Central District of California asserting infringement of United States Patent Nos. 6,199,415 B1 ("the '415 Patent") and 6,248,741 B1 ("the '741 Patent"). Alcon moved for summary judgment of non-infringement, which the court granted on May 8, 2002. *See Allergan, Inc. v. Alcon Laboratories, Inc., 200 F.Supp.2d 1219 (C.D.Cal.2002)* B & L subsequently filed a similar motion, which was also granted.

On October 15, 2002, Allergan obtained the '464 patent, which issued as a continuation of the application that led to the '741 patent, which, in turn, is a continuation of the application that led to the '415 patent. The '464 patent is the subject of the current action.

The defendants in the present case filed a "mirror image" declaratory judgment action against Allergan concerning the '464 patent in the Central District of California on December 23, 2002.

III. DISCUSSION

Alcon and B & L move to transfer this action to the District Court for the Central District of California, Southern Division pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district   where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action could have been filed in the Central District of California, Southern Division. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995)*.

*2 When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN1. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F.Supp.2d 192 (D.Del.1998).*

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the plaintiffs and several of the defendants are Delaware entities, and should reasonably expect to litigate in the forum, there is little connection between Delaware and this action or the parties; (2) each party either maintains its principle place of business in California, or has facilities there, whereas no party maintains operations in Delaware; (3) the parties are large and international organizations with apparently substantial assets; (4) because the parties are already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the defendants' "mirror image" action currently pending in the Central District of California, Southern Division. Thus, given the on-going relationship the Central District of California has with the same parties, and the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants.

III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendants' motion to transfer this case (D.I.6) is GRANTED.
2. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Central District of California, Southern Division.

D.Del.,2003.
Allergan, Inc., Allergan Sales, LLC v. Alcon Laboratories, Inc., Alcon Research Ltd., Alcon Inc., Bausch & Lomb, Inc.
Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02cv01682 (Docket) (Dec. 16, 2002)

END OF DOCUMENT

# EXHIBIT D



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)
(Cite as: 2003 WL 1565864 (D.Del.))

Page 1

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
BAYER BIOSCIENCE N.V., Plaintiff,
v.
MONSANTO COMPANY, Defendant.
No. C.A. 03-023 GMS.

March 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*\*1* On January 10, 2003, the plaintiff, Bayer Bioscience, N.V. ("Bayer"), filed the above-captioned action alleging that Monsanto Company ("Monsanto") is engaging in activity that infringes Bayer's U.S. Patent No. 5,659,123 ("the '123 patent").

Presently before the court is Monsanto's motion to transfer the case to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). For the following reasons, the court will grant this motion.

II. BACKGROUND

Bayer is a foreign corporation headquartered in Ghent, Belgium. Monsanto is a Delaware corporation, with its headquarters in St. Louis, Missouri.

The patent at issue involves a corn product that has been genetically modified to express a particular "Bt" gene that makes the corn resistant to a type of Coleopteran insect known as the corn rootworm. For the past two years, Monsanto and Bayer have been engaged in litigation in the Eastern District of Missouri regarding four other patents assigned to Bayer. Those four patents all generally relate to crops genetically engineered with a "Bt gene," purportedly rendering the crops toxic to a class of insects known

as Lepidopteran insects.

On December 27, 2002, the Missouri District Court issued a summary judgment order finding that all four of the patents-in-suit in that case were unenforceable due to inequitable conduct. On January 10, 2003, Bayer filed the present action. Also on January 10, 2003, Monsanto filed a declaratory judgment action for noninfringement in the Missouri District Court.

III. DISCUSSION

A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir.1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id.* at 937.

Applying the first-filed rule, Bayer now argues that it would be improper for the court to transfer this first-filed action to the Eastern District of Missouri. While the court does not dispute that this action is first-filed, albeit only by several hours, for the following reasons, the court concludes that the 1404(a) factors nevertheless weigh in favor of litigating this dispute in Missouri. *See id.* at 937-38 (noting that "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.").

B. Section 1404(a)

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it. [FN1] Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)
(Cite as: 2003 WL 1565864 (D.Del.))

court will move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

> FN1. As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

*2 When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum. [FN2] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN2. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.*, 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigating apparently related issues in Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as

to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the on-going relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

IV. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. Bayer's Motion for Leave to File a Sur-Reply (D.I.10) is GRANTED as unopposed.
2. Monsanto's Motion to Transfer this case (D.I.5) is GRANTED.
3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 24197925 (Trial Pleading) Complaint for Patent Infringement (Jan. 10, 2003)

• 2003 WL 24207834 (Trial Pleading) Complaint for Patent Infringement (Jan. 10, 2003)

• 1:03CV00023 (Docket) (Jan. 10, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d                                             Page 1
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
SUMITO MITSUBISHI SILICON CORP., aka Sumco, and
Sumco USA Corp., Plaintiffs,
v.
MEMC ELECTRONIC MATERIALS, INC., Defendant
No. Civ. 04-852-SLR.

March 30, 2005.

Richard D. Kirk, of Morris, James, Hitchens & Williams
LLP, Wilmington, Delaware, for Plaintiffs, R. Terrence
Rader, David T. Nikaido, and Ellen A. Efros, of Rader,
Rishman & Grauer PLLC, Bloomfield Hills, MI, of counsel.
Patricia S. Rogowski, of Connolly Bove Lodge & Hutz
LLP, Wilmington, Delaware, for Defendant, Robert M.
Evans, Jr., and Marc Vander Tuig, of Senniger Powers, St.
Louis, Missouri, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 13, 2004, plaintiffs Sumitomo Mitsubishi Silicon
Corporation and SUMCO USA Corporation (collectively
"plaintiffs") filed the present action against defendant
MEMC Electronic Materials, Incorporated (D.I.1) In re-
sponse, defendant filed a motion to dismiss, transfer, or stay
plaintiffs' complaint. (D.I.10) Plaintiffs subsequently filed a
first amended complaint. (D. I. 14) Presently before the
court is defendant's motion to dismiss, transfer, or stay
plaintiffs' amended complaint.(D.I.19) For the reasons that
follow, the court denies defendant's motion to dismiss or
stay plaintiffs' amended complaint, but grants defendant's
motion to transfer the case to the United States District
Court for the Northern District of California.

> FN1. The amended complaint alleges defendant
> monopolized the low defect silicon wafer market in
> the United States by enforcing or threatening to en-
> force the "fraudulently-procured" U.S. Patent No.
> 5,919,302 ("the '302 patent") and United States
> Patent No. 6,287,380 ("the '380 patent"). Plaintiffs

also request declaratory judgment that: (1) none of
their products infringe the '302 patent or the '380
patent; (2) the '302 patent and the '380 patent are
invalid for failure to comply with 35 U.S.C. §§
101, 102, 103, and 112; (3) the '302 patent and the
'380 patent are unenforceable under the doctrine of
inequitable conduct; and (4) the '302 patent and the
'380 patent are void and unenforceable because of
defendant's patent misuse. (D.I. 14 at 22-26)

> FN2. Since plaintiff filed an amended complaint,
> its original complaint and all motions related to
> that original complaint (i.e., D.I.10) are moot. The
> court will only issue a ruling on defendant's motion
> to dismiss, transfer, or stay plaintiffs' amended
> complaint. The court will consider arguments in
> motions related to the originally filed complaint
> only as they pertain to defendant's motion to dis-
> miss, transfer, or stay the amended complaint.

II. BACKGROUND

Plaintiff Sumitomo Mitsubishi Silicon Corporation is a Ja-
panese corporation with its principal place of business in
Tokyo, Japan. (D. I. 14 at 4) Plaintiff SUMCO USA Cor-
poration is a Delaware corporation with its principal place
of business in Fremont, California. (Id.) Defendant MEMC
Electronic Materials, Inc. is a Delaware corporation with its
principal place of business in St. Peters, Missouri. (Id.) The
parties are leading worldwide producers of electronic grade
silicon wafers for the semiconductor industries. (Id.)

On December 14, 2001, defendant sued the predecessors in
interest of plaintiffs in the Northern District of California
("the Northern District Litigation"). (D.I. 11, ex. 2 at 5; D.I.
14 at 13; D.I. 20 at 3) On July 15, 2002, defendant filed an
amended complaint which alleged that plaintiffs directly in-
fringed and induced infringement of the '302 patent (D.I. 11,
ex. 1)

> FN3. The predecessors in interest to plaintiffs are
> Mitsubishi Materials Silicon Corporation, Mit-
> subishi Silicon America Corporation, Sumitomo
> Mitsubishi Silicon Corporation, SUMCO USA
> Corporation and SUMCO USA Sales Corporation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 2
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

(D.I.11, ex. 6) After a corporate merger in early 2002, the present plaintiffs were formed and defendant amended its complaint accordingly.

FN4. In the Northern District Litigation, defendant attempted to expand the scope of the litigation to include another patent, the '380 patent, in an effort to preclude plaintiffs from arguing they had a non-infringing alternative to the '302 patent. (D.I.

In the Northern District Litigation, plaintiffs asserted in their amended answer that the '302 patent: (1) was not infringed; (2) was invalid; and (3) was unenforceable because of alleged inequitable conduct by defendant for failure to disclose material prior art to the United States Patent Office. (D.I. 11, ex. 3 at 3-4)

At the conclusion of discovery in the Northern District Litigation, plaintiffs and defendant filed motions for summary judgment: (1) of zero damages (D.I. 11, ex. 2 at 22); (2) of invalidity of the '302 patent (id. at 38); (3) of noninfringement of the '302 patent (id. at 45); (4) that the '302 patent correctly listed all inventors (id. at 46); (5) that the asserted claims read on the accused wafers (id. at 47); and (6) that the '302 patent met the enablement requirements of 35 U.S.C. § 112 (id.). The court granted plaintiffs' motion for summary judgment of zero damages and then struck all remaining motions for summary judgment (Id. at 46, 51). On April 22, 2004, the court entered a final judgment of noninfringment. (Id. at 61) Defendant appealed the decision to the United States Court of Appeals for the Federal Circuit (D.I 21, ex. 7)

After the court entered summary judgment, plaintiffs filed a motion for attorneys' fees, claiming that defendant had commenced the Northern District Litigation without conducting an adequate pre-filing investigation and prosecuted the lawsuit without ever asserting an adequate infringement contention. (D.I. 11, ex. 4 at 2, 14, 19, 20) This motion was denied (Id., ex. 6 at 7-11)

III. STANDARD OF REVIEW

*2 Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might

have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 208 (D.Del.1998).

FN5. Title 28, Section § 1404(a) provides:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail" ADE Corp. v. KLA-Tencor Corp., 138 F.Supp.2d 565, 567 (D.Del.2001); Shutte, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. C.R. Bard, Inc. v. Guidant Corp., 997 F.Supp. 556, 562 (D.Del 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 WL 1617186 (D.Del. Nov. 28, 2001); Cont'l Cas. Co. v. Am. Home Assurance Co., 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." In re ML-Lee Acquisition Fund II, L.P., 816 F.Supp. 973, 976 (D.Del.1993)

The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995). Although emphas-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

izing that "there is no definitive formula or list of factors to consider," *id.*, the Court has identified potential factors it characterizes as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

### IV. DISCUSSION

**\*3** The facts of this case balance strongly in favor of transfer to the Northern District of California. The Northern District Litigation was filed before the present action. The court in the Northern District Litigation has considered and ruled on many of the issues presented by plaintiffs' amended complaint. In particular, that court has already considered briefs regarding whether the '302 patent was fraudulently obtained, was invalid under the doctrine of inequitable conduct, or was invalid for patent misuse. Furthermore, the court has already considered whether plaintiffs' Samsung wafer infringed the '302 patent. (D.I. 22, exs. 16, 17, 18, 19, 20, 21; D.I. 11, ex. 2 at 46, 61) Finally, the court was presented with several briefs addressing whether the '302 patent was invalid (D.I.22, exs.19, 20, 21, 22) Thus, all of plaintiffs' contentions relating the '302 patent have already been presented to the court in the Northern District Litigation.

> FN6. As plaintiffs stated in its originally filed complaint, "[a] complete discussion of [defendant's] inequitable conduct is set forth in [plaintiffs'] expert

reports, which were filed in the [Northern District Litigation]." (D.I.1 at 10)

The '380 patent is very similar to the '302 patent. Both the '302 patent and the '380 patent issued from U.S. Patent Application Ser. No. 60/041,845. (D.I.14, exs. A, B) The '302 patent and the '380 patent have similar written descriptions and share many of the same figures. (*Id.*) Consequently, the court's experience with the '302 patent in the Northern District Litigation may well be helpful in resolving many of plaintiffs' arguments regarding the '380 patent.

The court in the Northern District Litigation has three years of experience with this litigation and has already issued several orders regarding infringement of the '302 patent. Its grasp of the facts and issues in connection with the '302 patent, together with the similarity between the '302 patent and the '380 patent, make that court a more appropriate venue for the present matter. In the interests of judicial economy and of avoiding inconsistent rulings, this court transfers the present matter to the Northern District of California.

### V. CONCLUSION

For the reasons stated above, the court denies defendant's motion to dismiss or stay this matter, but grants defendant's motion to transfer the case. An appropriate order shall issue.

### ORDER

At Wilmington this 30th day of March, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion to dismiss or to stay (D.I.19) plaintiffs' complaint is denied.

2. Defendant's motion to transfer the present action to the Northern District of California (D.I.19) is granted.

D.Del.,2005.
Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F. Supp 2d
Not Reported in F. Supp 2d, 2005 WL 735880 (D Del )
(Cite as: Not Reported in F.Supp.2d)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2003 WL 1966438 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C

Briefs and Other Related Documents

Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
3COM CORPORATION, Plaintiff,
v.
D-LINK SYSTEMS, INC., Defendant.
**No. C.A. 03-014 GMS.**

April 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

### I. INTRODUCTION

**\*1** On January 7, 2003, the plaintiff, 3Com
Corporation ("3Com") filed the instant action
alleging infringement of three patents relating to
network interface adapters. The defendant, D-Link
Systems, Inc. ("D-Link"), moves to transfer this case
to the United States District Court for the Northern
District of California pursuant to 28 U.S.C. §
1404(a) (D.I.11). For the following reasons, the court
will grant the defendant's motion.

### II. DISCUSSION

D-Link moves to transfer this action to the District
Court for the Northern District of California pursuant
to 28 U.S.C. § 1404(a). Section 1404(a) provides
that "[f]or convenience of [the] parties and witnesses,
in the interest of justice," the court may transfer a
civil action "to any other district ... where it might
have been brought." 28 U.S.C. § 1404(a). It is the
movant's burden to establish the need for transfer,
and 'the plaintiff's choice of venue [will] not be
lightly disturbed.' *Jumara v. State Farm Ins. Co.,* 55
F.3d 873, 879 (3d Cir.1995) (citations omitted).

When considering a motion to transfer, the court
must determine 'whether on balance the litigation
would more conveniently proceed and the interest of
justice be better served by transfer to a different
forum.' *Id.* This inquiry requires "a multi-factor
balancing test" embracing not only the statutory
criteria of convenience of the parties and the
witnesses and the interest of justice, but all relevant

factors, including certain private and public interests.
*Id.* at 875, 879. These private interests include the
plaintiff's choice of forum; the defendant's
preference; whether the claim arose elsewhere; and
the location of books and record, to the extent that
they could not be produced in the alternative forum.
*Id.* at 879. Among the relevant public interests are:
"[t]he enforceability of the judgment; practical
considerations that could make the trial easy,
expeditious, or inexpensive; the relative
administrative difficulty in the two fora resulting
from court congestion; the local interest in deciding
local controversies at home; [and] the public policies
of the fora." *Id.* at 879-80 (citations omitted).

> FN1. The first three of these private interest
> collapse into other portions of the *Jumara*
> analysis. The court, therefore, will consider
> them in the context of the entire inquiry
> only. *See Affymetrix, Inc. v. Synteni, Inc.
> and Incite Pharmaceuticals, Inc.,* 28
> F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds
that D-Link has met its burden of demonstrating that
transfer is appropriate. First, it is clear that this case
could have been brought in the Northern District of
California. Any federal district court possesses
subject matter jurisdiction over federal patent law
claims such as those at issue in the present action. 28
U.S.C. § § 1331 and 1338. Further, venue is proper
in the Northern District of California because the
defendant is a California corporation with its sole
place of business in that state. 28 U.S.C. § 1400(b)
("Any civil action for patent infringement may be
brought in the judicial district where the defendant
resides....").

Having determined that the case could be properly
heard in the Northern District of California, the court
now considers whether it would more conveniently
proceed in that forum and whether the interest of
justice supports a transfer to that district. Again, the
court finds that these criteria are met. First, the court
notes that although 3Com is a Delaware corporation,
its principal place of business is in Santa Clara,
California. D-Link is a California corporation with its
sole place of business in Irvine, California. Although
some of D-Link's products, including the accused
products, are sold in Delaware, the connection to this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1966438 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

forum ends there. Neither 3Com nor D-link maintains or owns any facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D-Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

*2 In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, Realtek Semiconductor Corp. ("Realtek") and Via Technologies, Inc. ("Via"). Realtek and Via are Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

### III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these parties, while justice, convenience, cost, and expediency favor a forum in California. The court recognizes that the Northern

District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. *Jumara, 55 F.3d at 879* (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I.11) is GRANTED.

D.Del.,2003.
3Com Corp. v. D-Link Systems, Inc.
Not Reported in F.Supp.2d, 2003 WL 1966438 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00014 (Docket) (Jan. 07, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

C

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
OMNICOM GROUP, INC., and Harrison & Star,
Inc., Plaintiffs,
v.
EMPLOYERS REINSURANCE CORPORATION,
Defendant.
No. Civ.A. 01-839-GMS.

Jan. 28, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

## I. INTRODUCTION

*1 On November 8, 2001, Employers Reinsurance
Corporation ("ERC") filed a declaratory judgment
action against Omnicom Group, Inc. ("Omnicom"),
Harrison & Star ("H & S"), and Merck & Co., Inc.
("Merck"), in the New York State Supreme Court,
New York County. On November 15, 2001,
Omnicom and H & S filed a declaratory judgment
action against ERC in the Delaware Superior Court.
ERC removed the Delaware Superior Court action to
the United States District Court for the District of
Delaware on December 17, 2001.

Presently before the court is ERC's motion to dismiss,
or alternatively, to transfer this case to the Southern
District of New York, or to stay this case pending the
outcome of the state court litigation in New York
County. ERC argues that the court should dismiss or
stay this action because a concurrent similar action
exists in a New York state court. It further argues
that, should the court not dismiss or stay this action,
the case should be transferred to New York pursuant
to 28 U.S.C. § 1404(a). For the reasons that follow,
the court will grant ERC's motion to transfer.

> FN1. The court cannot transfer this case to
> the New York state court. Rather, it must
> transfer it to the Southern District of New
> York. The court recognizes that such an
> action will not alleviate the burden of having
> two identical cases being tried by two
> courts. However, the court remains

convinced that it is less costly, and more
convenient, to try the cases in one district,
rather than across state lines. Moreover,
while the court expresses no opinion on the
propriety of such an action, remand of the
case from the Southern District of New
York to the New York State Supreme Court,
New York County, will now be an option.

## II. BACKGROUND

Omnicom is incorporated under the laws of the State
of New York, with its principle place of business in
New York. It is a holding corporation for a number of
other corporations, including its wholly-owned
subsidiary, H & S. H & S provides marketing and
advertising consultation and services. It is also
incorporated under the laws of the State of New
York, with its principle place of business in New
York. The defendant insurer, ERC, is incorporated in
the State of Missouri, and is licenced to do business
in New York.

In May 1996, ERC issued an insurance policy (the
"policy") in favor of Omnicom as the named insured.
ERC also provided coverage to H & S under
Omnicom's policy.

In January 1998, Omnicom notified ERC that "Jane
Doe" had filed a lawsuit against Merck and H & S in
the New York State Supreme Court, Suffolk County
(the "Suffolk County action"). The complaint alleged
various causes of action for libel, fraud, civil rights
violations and intentional infliction of emotional
distress. On September 21, 2001, the jury returned a
verdict awarding Jane Doe compensatory and
punitive damages.

On November 8, 2001, ERC filed a declaratory
judgment action in the New York State Supreme
Court, New York County, against Omnicom, Merck,
H & S and Jane Doe. In the complaint, ERC sought a
declaratory judgment that it is not obligated to pay
any portion of the punitive damages award against
the named defendants in the Suffolk County action.

> FN2. Jane Doe is a nominal defendant
> against whom no relief is sought.

Subsequently, on November 15, 2001, Omnicom and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

H & S filed the present action in the Delaware Superior Court. ERC removed the case to the United States District Court for the District of Delaware on December 17, 2001. In this action, Omnicom and H & S seek a declaratory judgment that ERC is obligated to pay the punitive damages arising from the Suffolk County action.

For the following reasons, the court concludes that the "balance of convenience" tips in favor of granting ERC's motion to transfer. Because it finds that transferring the case is the appropriate outcome, the court need not address the alternative motions to stay or dismiss the Delaware action.

III. DISCUSSION

*2 ERC seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a). 1. The "First-Filed" Rule

The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. See EEOC v. University of Pennsylvania, 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. See Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp. 169, 171 (E.D.Pa.1991).

As this rule only applies to related cases filed in different federal courts, it is not applicable to the present situation where one action is pending in state court. Therefore, the court declines to further address the "first-filed" rule as a basis to transfer this action to New York.

FN3. Because the court finds other compelling reasons to transfer this case to New York, it expresses no opinion on whether the first-filed rule should apply to concurrent state and federal cases.

2. Section 1404(a)

Transfer to New York is, however, mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it

might have been brought." 28 U.S.C. § 1404(a). While Omnicom and H & S do not expressly agree that this action could have been filed in the Southern District of New York as a diversity action, there can be little dispute that this is so. The plaintiffs are incorporated in New York, with their principle places of business in the Southern District of New York. The defendant is a Missouri corporation. Further, the amount in controversy is approximately $250,000. Accordingly, the Southern District of New York is an appropriate venue.

Having satisfied the initial section 1404(a) requirement, the court will, therefore, move on with the inquiry as directed by the Third Circuit. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).

In Jumara, the Third Circuit provided a list of factors to assist the district court in determining "whether, on balance, the litigation would conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." Id. These factors include six private and five public interests which the court may consider. See id.

a. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum. See id.

FN4. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three Jumara factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. See id. Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

### 1. The Convenience of the Parties

Geographically, New York is not inconvenient for Omnicom and H & S, both of which are incorporated and headquartered in New York. Furthermore, transfer to New York would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case pending in the New York Supreme Court. Bringing witnesses and relevant documents to only one location, here New York, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

### 2. The Convenience of Witnesses

*3 Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymetrix,* 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

Omnicom and H & S argue that ERC has failed to demonstrate that Delaware would be an inconvenient forum for potential non-party witnesses. The court agrees, and notes that ERC's bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. The court notes that all the material witnesses in this dispute, party or otherwise, will be in New York already to litigate the related state court case now pending in New York County. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence that a non-party witness

will be unable to attend trial in Delaware, this factor must weigh against transfer.

### 3. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. Neither party argues that the records and documents are voluminous in this case. Thus, neither party can claim one forum is better than another forum in this regard. However, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in New York for the litigation of the state court case. The court sees no need to require that Omnicom, H & S and ERC move the same documents from state to state. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra*

### b. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the factors most relevant to the pending case.

### 1. Administrative Difficulty

Omnicom and H & S argue that the Southern District of New York has many more case filings than the District of Delaware. Moreover, in 2000, Delaware had seventy civil cases that were over three years old, whereas the Southern District had over one-thousand. Thus, they argue that the Delaware court would be more able to expeditiously address this action.

*4 The court is mindful of the court congestion that concerns Omnicom and H & S. It thus finds that Delaware's lighter caseload weighs in favor of denying the transfer to New York. However, this is but one factor in the analysis and is not alone determinative of the issue.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

#### 2. Public Policies of the Fora

The next relevant factor concerns New York and Delaware's public policies. Delaware public policy favors the insurability of punitive damages. *See Whalen v. On-Deck, 514 A.2d 1072, 1074 (Del.1986).* New York's policy favors the uninsurability of punitive damages. *See Home Ins. Co. v. American Home Products Corp., 75 N.Y.2d 196, 200 (N.Y.1990).*

In this action, a New York insured seeks to enforce its insurance policy against an insurer with its principle place of business in New York, for coverage based on a cause of action arising within New York's borders. New York could thus make a compelling argument that its policy should be applied. Likewise, Omnicom and H & S are within their rights to argue that Delaware's policy should be applied because the insurance policy was allegedly issued in Delaware. However, where the policy was actually issued is a disputed fact and not for the court to decide on this motion. Accordingly, the court finds that, given the equally important policies of the states, and the conflicting evidence regarding the policy in question, this factor must remain neutral.

#### 3. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

The parties do not dispute that the issue presented in both of the cases is identical. Specifically, the issue is whether ERC is obligated to insure Omnicom and H & S against punitive damages awards. To have courts in two different states each deciding this issue would not be in the interest of sound judicial administration. Nor would such a result be the most expeditious and inexpensive method of determining the parties' rights and liabilities. The parties are already located in New York, both to litigate the pending case in the New York Supreme Court, and to conduct their daily business.

Accordingly, the court finds that this factor weighs heavily in favor of transferring this case to New York.

#### 4. Local Interest in Deciding This Action

Finally, the court finds that Omnicom and H & S have failed to articulate any clear interest that Delaware has in this case. Rather, they briefly allude to the possibility that the insurance contract may have been issued in Delaware. The court finds that this disputed factual issue alone is not enough to conclude that Delaware has a significant interest in this action.

In contrast, New York has a great interest in the outcome of this action. The parties are either New York corporations, or are licensed to do business in New York. Further, the insurance coverage dispute emanates from Jane Doe's original Suffolk County action. As such, the causes of action in the two cases currently at issue arise from alleged wrongful acts in the State of New York.

**\*5** Thus, this factor also weighs heavily in favor of transferring this case to New York.

#### IV. CONCLUSION

The court is mindful that there are several factors weighing against transferring this case to New York. However, there are an equal number of factors weighing in favor of transfer that the court finds are deserving of more significant weight. Particularly persuasive are the following facts. Delaware has no clear connection to this case. However, all the parties have significant connections to New York, the underlying action arose in New York, and the identical case is currently pending in a New York court. Thus, the court concludes that the "balance of convenience" tips in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:
1. Employers Reinsurance Corporation's alternative motion to transfer this action to the Southern District of New York (D.I.2) is GRANTED.
2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.
3. Omnicom Group, Inc. and Harrison and Star, Inc.'s Motion For Leave to File a Sur-Reply Brief (D.I.13) is declared MOOT.

D.Del.,2002.
Omnicom Group, Inc. v. Employers Reinsurance Corp.
Not Reported in F.Supp.2d, 2002 WL 109346 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.