# EXHIBIT E

Not Reported in F.Supp.
(Cite as: 1992 WL 22691 (N.D.Ill.))

Page 12

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

CARUS CORPORATION, Plaintiff,
v.
GREATER TEXAS FINISHING, CORPORATION, Defendant.

No. 91 C 2560.

Jan. 31, 1992.

MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

I. INTRODUCTION

*1 The plaintiff, Carus Corporation ("Carus"), has brought this suit seeking a declaratory judgment that it has not violated the patent of defendant Greater Texas Finishing Corporation ("Greater Texas"). Greater Texas has filed a motion to dismiss for lack of personal jurisdiction and, in the alternative, a motion to transfer this action to the United States District Court for the Southern District of New York, where it has three similar cases pending involving alleged infringement of the same patent. For the reasons stated below, the Court grants the defendant's motion to transfer. [FN1] Because the Court transfers this case, the Court need not decide whether personal jurisdiction is proper over Greater Texas in Illinois. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465-66, 82 S.Ct. 913, 915 (1962); Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 449 (W.D.N.C.1989); Marder v. Dembinski, 498 F.Supp. 1323, 1324 (N.D.Ill.1980) (Shadur, J.).

II. FACTS

For purposes of this motion to transfer, the Court has assumed the allegations contained in Carus' complaint to be true. This case involves an alleged infringement of Greater Texas' patent on a process known as "acid wash," which produces a random faded effect on clothing such as jeans and denim. An Italian inventor, Francesco Ricci, obtained patent No. 4,740,213 ('213 patent) on April 26, 1988 and subsequently assigned his rights to Golden Trade, the current owner and exclusive licensee.

Carus supplies chemicals to commercial customers. It also makes products that bleach denim products under the trademark Denox. Amongst its products, Carus sells permanganate products such as potassium permanganate per se and cementitious pellets with embedded permanganate. [FN2] On April 10, 1991, Greater Texas sent a letter to Carus warning against "infringement and contributory infringement" of the '213 patent, by the sale of potassium permanganate pellets. Carus claims that potassium permanganate is a staple commodity of commerce and that it has not sold any material especially made or adapted for the '213 patent method.

Before Carus filed suit, Greater Texas had brought three actions involving ten defendants for violation of the '213 patent in federal court in the Southern District of New York. Those actions are currently pending. Greater Texas argues that consolidation of this action with the suits in New York will avoid the risk of inconsistent determinations on similar issues, promote judicial economy, and, through consolidated discovery, prevent duplicative discovery.

III. ANALYSIS

Before a court grants a § 1404(a) motion to transfer, the movant must show that (1) venue is proper in the transferor district; (2) the transferor court has the power to transfer the case; and (3) the transfer is for the convenience of the parties and witnesses, and is in the interests of justice. Zurich Ins. Co. v. Raymark Industries, Inc., 672 F.Supp. 1102, 1103 (N.D.Ill.1987). The parties do not dispute the existence of the first two elements necessary for transfer of this case. Carus, however, asserts that transfer would be inconvenient to the parties and witnesses and would not be in the interests of justice.

A. Convenience of Witnesses and Location of Documentary Evidence

*2 Carus argues that convenience of the witnesses and location of the documentary evidence favor Illinois, and not New York. The Court recognizes that all of Carus' witnesses and documents regarding

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.
(Cite as: 1992 WL 22691, *2 (N.D.Ill.))

Page 13

this suit are located in Ottawa, Illinois, and transfer to New York would be an added expense for it. Greater Texas' witnesses and documents are located at its principal place of business in El Paso, Texas, and not New York. The problem is that the three pending lawsuits in New York will require the testimony of the same Greater Texas witnesses that would be required to travel to Chicago if the Court were to deny the motion to transfer. Consolidating the cases will be much more economical and timesaving for Greater Texas, albeit at the expense of Carus. But as noted below, the interests of justice far outweigh the interest of Carus in a more convenient forum.

B. Interests of Justice

The final and dispositive issue in this case involves whether the interests of justice favor transfer to New York. The most compelling factor in determining the appropriateness of transfer is the interest of society in the efficient administration of justice. Magnavox Co. v. APF Electronics, Inc. 496 F.Supp. 29 (N.D.Ill.1980). As a general proposition, cases should be transferred to the district where related actions are pending. A.P.T. Inc. v. Quad Environmental Technologies, 698 F.Supp. 718, 723 (N.D.Ill.1988) (Bua, J.) (transferring patent case); SEC v. First National Finance Corp., 392 F.Supp. 239, 241 (N.D.Ill.1975) (Hoffman, S.J.). The presence of three related cases involving the same patent and the same type of infringement actions in the transferor district weighs heavily in favor of transfer. See Zurich, 672 F.Supp. at 1104. In addition, these cases all involve complex technical and legal issues. Magnavox, 496 F.Supp. at 34. Failure to transfer this case would result in duplicative judicial effort requiring two courts to resolve a number of the same issues. See Id. Therefore, transfer of this action to a district which is already familiar and experienced with the facts and law relevant to this action will promote judicial economy. Zurich, 672 F.Supp. at 1104.

Apart from conserving judicial resources, transfer will provide for the efficient adjudication of complex litigation due to the possibility of consolidating both discovery and trial. A.P.T., 698 F.Supp. at 724. In addition, transferring this case to New York will avoid inconsistent determinations regarding the same patent. Transfer is even more appropriate where the suit in the other district was the first one filed, as in this case. Id.

Carus argues that no common issue of infringement exists between this case and the New York cases because its products are different than the allegedly infringing products at issue in New York. This argument ignores the fact that the testimony relating to Greater Texas' product will be the same in all four cases. Carus also makes an argument that, unlike the New York cases, the validity of the '213 patent is not at issue in this case. Greater Texas has stated that validity will be a disputed issue when it answers and counter-claims for Carus' alleged infringement. For this reason, the Court concludes that the validity of the '213 patent will be at issue in both this case and the New York cases.

IV. CONCLUSION

*3 Three similar lawsuits involving the alleged infringement of the same patent at issue in this case are currently pending in the federal court in New York. Because of this, the interests of justice dictate that this case be transferred there. The Court grants the defendant's motion to transfer this case to the United States District Court for the Southern District of New York.

FN1. The Court also denies the parties' requests for oral argument on these questions finding it to be unnecessary.

FN2. Webster's Ninth New Collegiate Dictionary, 876 (1985) defines "permanganate" as a "dark purple crystalline compound that is a salt of permanganic acid." "Permanganic acid" is defined as "an unstable strong acid known chiefly in purple colored strongly oxidizing aqueous solutions."

1992 WL 22691 (N.D Ill.)

END OF DOCUMENT

# EXHIBIT F

Not Reported in F.Supp.
17 U.S.P.Q.2d 1890
(Cite as: 1990 WL 284713 (D.Ariz.))

Page 24

United States District Court,
D. Arizona.

IMPRA, INC., Plaintiff,
v.
QUINTON INSTRUMENTS CO. and Sakharam
D. Mahurkar, Defendants.

No. CIV-90-0383 PHX WPC.

June 26, 1990.

Samuel Sutton, Phoenix, Ariz., for plaintiff.

Neil Vincent Wake, Phoenix, Ariz., for defendants.

ORDER

COPPLE, Senior District Judge.

*1 Dr. Mahurkar and Quinton Instruments ("Quinton") have each filed separate motions, with accompanying voluminous exhibits and attachments, to either transfer the case to the Northern District of Illinois or to dismiss the action. Plaintiff IMPRA, Inc. ("IMPRA") has responded to both motions with equally voluminous exhibits and attachments. Dr. Mahurkar filed both a reply and, with court permission, a supplemental reply. Quinton also replied shortly before the hearing which was held on June 22, 1990.

I. Factual and Procedural Background

Dr. Mahurkar owns several patents pertaining to dual lumen hemodialysis catheters, including the three patents which are the subject of this litigation. After receiving three separate letters from Dr. Mahurkar charging IMPRA with patent infringement, IMPRA filed the present action in this Court against Dr. Mahurkar and his exclusive licensee, Quinton, to resolve the controversy concerning possible patent infringements.

II. Discussion

Dr. Mahurkar and Quinton both seek to transfer this action to the Northern District of Illinois or to have the action dismissed. The Court will first examine the merits of the Motions to Transfer. The authority to transfer and the standard to be used in determining the appropriateness of a transfer is set forth in 28 U.S.C. Section 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

To determine the convenience of parties and witnesses and to determine what is in the "interest of justice," a Court must necessarily examine the particular facts of the case.

A. Plaintiff's Choice of Forum

The first factor the Court must consider is plaintiff's choice of forum. Plaintiff's choice of forum is entitled to consideration under Section 1404(a). Gallery House, Inc. v. Yi, 587 F.Supp. 1036, 1040 (N.D.Ill.1984), citing Piper Aircraft v. Reyno, 454 U.S. 235 (1981). IMPRA argues that this is especially true given that Arizona is IMPRA's "home forum." IMPRA is an Arizona corporation and its principal offices have been located in Phoenix or Tempe, Arizona since its inception in 1974.

Dr. Mahurkar contends that while IMPRA is headquartered in Arizona, it has world-wide, multi-million dollar affiliates such as IMPRA International, Inc.; IMPRA Medica SA in Geneva, Switzerland; and, IMPRA (U.K.) Ltd., in Ascot, England. According to Dr. Mahurkar, little weight should be accorded to plaintiff's home forum selection where it has such global interests.

Plaintiff's forum selection should be considered as just one of many factors. See, E.I. DuPont de Nemours v. Diamond Shamrock Corp., 522 F.Supp. 588 (D.Del.1981) (stating that, "the preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right.") While this factor favors IMPRA, it is not absolute as there are many other factors which must be considered.

B. Convenience of Parties and Witnesses

*2 An important factor in considering Motions to Transfer is the convenience of parties and witnesses. 28 U.S.C. Section 1404(a). However, it is not appropriate to transfer venue when the transfer merely shifts the inconvenience from one party to

Not Reported in F.Supp.
(Cite as: 1990 WL 284713, *2 (D.Ariz.))

Page 25

another. Gallery House, Inc., 587 F.Supp. at 1040 (N.D. Ill. 1984) (mere shifting the inconvenience is not a strong enough reason transfer a case). Accordingly, the Court must weigh the relative inconvenience of the undesired forum and the convenience of the desired forum.

IMPRA alleges that this litigation will likely require testimony regarding the construction, function, and testing of its dual lumen catheters. According to IMPRA, the persons most knowledgeable about these procedures reside in the greater metropolitan Phoenix area. IMPRA also claims that it is probable that Quinton and Dr. Mahurkar will file compulsory counterclaims regarding the infringement of the patents. Such counterclaims will, according to IMPRA, raise the issue of damages, and hence, sales and marketing of the devices. IMPRA claims that the persons most knowledgeable about sales and marketing of the devices also reside in the greater metropolitan Phoenix area. Further, IMPRA argues that all of its technical documents relevant to this litigation are maintained in Tempe, Arizona.

Dr. Mahurkar counters these arguments by citing statistics regarding IMPRA's financial ability to litigate in another forum. According to Dr. Mahurkar, a recent article in The Business Journal disclosed the IMPRA's annual sales for 1989 were about $18 million and IMPRA's president, Mr Green estimates that 1990 sales will rise to nearly $23 million.

Dr. Mahurkar also contends that he will be not only a crucial witness in the case, but will be needed to assist counsel in all phases of discovery. Dr. Mahurkar resides in Illinois. He suffers from diabetes and mastoiditis. These medical problems, according to Dr. Mahurkar, necessitate avoidance of airline travel whenever possible.

Additionally, Dr. Mahurkar has provided a list of witness he intends to use in the case. Four of the potential witnesses are from Illinois, one from Michigan, one from Indiana and one from Connecticut. Dr. Mahurkar claims that is it more convenient for himself and all these witness to have the case heard in Illinois.

An examination of the relative convenience of parties and witness reveals that this factor alone will not be conclusive as to whether the motion to transfer should be granted. There are potentially many witness in each geographic area and either party would suffer financially and otherwise from having to litigate in the other's chosen forum.

C. Case Pending in Another District

Another factor which courts may consider in ruling on Motions to Transfer is whether there is similar litigation pending in another district. As a general rule, cases should be transferred to districts where related actions are pending. Waller v. Burlington Northern Railroad Company, 650 F.Supp. 988, 991 (N.D. Ill.1987); Continental Ill. Bank & Trust Co. v. Stanley, 606 F.Supp. 558, 564 (N.D. Ill.1985). As pointed out in Dr. Mahurkar's Motion, the related actions may involve different parties, so long as there are common issues of fact and/or law. I-T-E Circuit Breaker Co. v. Regan, 384 F.2d 403 (8th Cir.1965).

*3 Dr. Mahurkar is currently defending the same three patents involved in this case in another case in the Northern District of Illinois. Vas-Cath v. Mahurkar, No. 88 C 4997 (N.D. Ill.) ("VasCath"). The patents are being attacked on the same grounds in Illinois as they are in the present litigation. Dr. Mahurkar alleges and it is uncontested by IMPRA that portions of the complaints in both the present case and Vas-Cath are nearly identical.

IMPRA argues that while the complaints are in some respects similar, the cases are not in the same procedural posture. The Vas-Cath case was filed on June 8, 1988 and a number of summary judgment motions are currently pending before the Court in Illinois. Dr. Mahurkar and Quinton argue that this procedural difference is not substantial, given that the Illinois Court will be better informed to rule on motions in the present case and given that one court could more consistently rule on the validity of the same patents. Dr. Mahurkar and Quinton also argue that transferring the case would ease the burden of discovery because much of the information already provided in the pending Vas-Cath case could be used in the present litigation.

Quinton's and Dr. Mahurkar's arguments of judicial economy by having one Court hear all of the motions; of judicial integrity by having a consistency in the rulings regarding the same patents

Not Reported in F.Supp.  
(Cite as: 1990 WL 284713, *3 (D.Ariz.))

Page 26

and of monetary savings by being able to use discovery already obtained are strong and heavily tip the balance in favor of transfer.

In reaching this conclusion, the Court need not rule on Dr. Mahurkar's and Quinton's alternative Motions to Dismiss. Any parts of those alternative Motions which remain unresolved may be raised again in the United States District Court for the Northern District of Illinois.

IT IS THEREFORE ORDERED:

1. That Defendant Dr. Mahurkar's Motion to Transfer is hereby granted;

2. That Defendant Quinton's alternative Motion to Transfer is hereby granted;

3. That any unresolved or alternative Motions to Dismiss are denied without prejudice so they may be raised again, if appropriate, in the United States District Court for the Northern District of Illinois; and,

4. That the Clerk of the Court transfer the case to the United States District Court for the Northern District of Illinois.

1990 WL 284713 (D.Ariz.), 17 U.S.P.Q.2d 1890

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo