# EXHIBIT K

Not Reported in F.Supp.2d
(Cite as: 2002 WL 109346 (D.Del.))

Page 39

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

OMNICOM GROUP, INC., and Harrison & Star, Inc., Plaintiffs,
v.
EMPLOYERS REINSURANCE CORPORATION, Defendant.

No. Civ.A. 01-839-GMS.

Jan. 28, 2002.

MEMORANDUM AND ORDER

SLEET, J.

I. INTRODUCTION

*1 On November 8, 2001, Employers Reinsurance Corporation ("ERC") filed a declaratory judgment action against Omnicom Group, Inc. ("Omnicom"), Harrison & Star ("H & S"), and Merck & Co., Inc. ("Merck"), in the New York State Supreme Court, New York County. On November 15, 2001, Omnicom and H & S filed a declaratory judgment action against ERC in the Delaware Superior Court. ERC removed the Delaware Superior Court action to the United States District Court for the District of Delaware on December 17, 2001.

Presently before the court is ERC's motion to dismiss, or alternatively, to transfer this case to the Southern District of New York, or to stay this case pending the outcome of the state court litigation in New York County. ERC argues that the court should dismiss or stay this action because a concurrent similar action exists in a New York state court. It further argues that, should the court not dismiss or stay this action, the case should be transferred to New York pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court will grant ERC's motion to transfer. [FN1]

   FN1. The court cannot transfer this case to the New York state court. Rather, it must transfer it to the Southern District of New York. The court recognizes that such an action will not alleviate the burden of having two identical cases being tried by two courts. However, the court remains convinced that it is less costly, and more convenient, to try the cases in one district, rather than across state lines. Moreover, while the court expresses no opinion on the propriety of such an action, remand of the case from the Southern District of New York to the New York State Supreme Court, New York County, will now be an option.

II. BACKGROUND

Omnicom is incorporated under the laws of the State of New York, with its principle place of business in New York. It is a holding corporation for a number of other corporations, including its wholly-owned subsidiary, H & S. H & S provides marketing and advertising consultation and services. It is also incorporated under the laws of the State of New York, with its principle place of business in New York. The defendant insurer, ERC, is incorporated in the State of Missouri, and is licenced to do business in New York.

In May 1996, ERC issued an insurance policy (the "policy") in favor of Omnicom as the named insured. ERC also provided coverage to H & S under Omnicom's policy.

In January 1998, Omnicom notified ERC that "Jane Doe" had filed a lawsuit against Merck and H & S in the New York State Supreme Court, Suffolk County (the "Suffolk County action"). The complaint alleged various causes of action for libel, fraud, civil rights violations and intentional infliction of emotional distress. On September 21, 2001, the jury returned a verdict awarding Jane Doe compensatory and punitive damages.

On November 8, 2001, ERC filed a declaratory judgment action in the New York State Supreme Court, New York County, against Omnicom, Merck, H & S and Jane Doe. [FN2] In the complaint, ERC sought a declaratory judgment that it is not obligated to pay any portion of the punitive damages award against the named defendants in the Suffolk County action.

   FN2. Jane Doe is a nominal defendant against whom no relief is sought.

Subsequently, on November 15, 2001, Omnicom and H & S filed the present action in the Delaware Superior Court. ERC removed the case to the United States District Court for the District of Delaware on

December 17, 2001. In this action, Omnicom and H & S seek a declaratory judgment that ERC is obligated to pay the punitive damages arising from the Suffolk County action.

For the following reasons, the court concludes that the "balance of convenience" tips in favor of granting ERC's motion to transfer. Because it finds that transferring the case is the appropriate outcome, the court need not address the alternative motions to stay or dismiss the Delaware action.

III. DISCUSSION
*2 ERC seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a).
1. The "First-Filed" Rule

The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. See EEOC v. University of Pennsylvania, 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. See Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp. 169, 171 (E.D.Pa.1991).

As this rule only applies to related cases filed in different federal courts, it is not applicable to the present situation where one action is pending in state court. Therefore, the court declines to further address the "first-filed" rule as a basis to transfer this action to New York. [FN3]

> FN3. Because the court finds other compelling reasons to transfer this case to New York, it expresses no opinion on whether the first-filed rule should apply to concurrent state and federal cases.

2. Section 1404(a)

Transfer to New York is, however, mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). While Omnicom and H & S do not expressly agree that this action could have been filed in the Southern District of New York as a diversity action, there can be little dispute that this is so. The plaintiffs are incorporated in New York, with their principle places of business in the Southern District of New York. The defendant is a Missouri corporation. Further, the amount in controversy is approximately $250,000. Accordingly, the Southern District of New York is an appropriate venue.

Having satisfied the initial section 1404(a) requirement, the court will, therefore, move on with the inquiry as directed by the Third Circuit. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).

In Jumara, the Third Circuit provided a list of factors to assist the district court in determining "whether, on balance, the litigation would conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." Id. These factors include six private and five public interests which the court may consider. See id.

a. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum. [FN4] See id.

> FN4. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three Jumara factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. See id. Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice See 28 U.S.C § 1404(a).

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d
(Cite as: 2002 WL 109346, *2 (D.Del.))

Page 41

1. The Convenience of the Parties

Geographically, New York is not inconvenient for Omnicom and H & S, both of which are incorporated and headquartered in New York. Furthermore, transfer to New York would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case pending in the New York Supreme Court. Bringing witnesses and relevant documents to only one location, here New York, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

2. The Convenience of Witnesses

*3 Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. See Affymeytrix, 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." See id. (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. See id.

Omnicom and H & S argue that ERC has failed to demonstrate that Delaware would be an inconvenient forum for potential non-party witnesses. The court agrees, and notes that ERC's bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. The court notes that all the material witnesses in this dispute, party or otherwise, will be in New York already to litigate the related state court case now pending in New York County. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice.

However, as there is no clear evidence that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

3. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. See id. at 205. Neither party argues that the records and documents are voluminous in this case. Thus, neither party can claim one forum is better than another forum in this regard. However, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in New York for the litigation of the state court case. The court sees no need to require that Omnicom, H & S and ERC move the same documents from state to state. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed supra.

b. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in Jumara may play no role in the "balance of convenience." See id. at 205. The court thus elects to discuss only the factors most relevant to the pending case.

1. Administrative Difficulty

Omnicom and H & S argue that the Southern District of New York has many more case filings than the District of Delaware. Moreover, in 2000, Delaware had seventy civil cases that were over three years old, whereas the Southern District had over one-thousand. Thus, they argue that the Delaware court would be more able to expeditiously address this action.

*4 The court is mindful of the court congestion that concerns Omnicom and H & S. It thus finds that Delaware's lighter caseload weighs in favor of denying the transfer to New York. However, this is but one factor in the analysis and is not alone

Not Reported in F.Supp.2d
(Cite as: 2002 WL 109346, *4 (D.Del.))

Page 42

determinative of the issue.

2. Public Policies of the Fora

The next relevant factor concerns New York and Delaware's public policies. Delaware public policy favors the insurability of punitive damages. See Whalen v. On-Deck, 514 A.2d 1072, 1074 (Del.1986). New York's policy favors the uninsurability of punitive damages. See Home Ins. Co. v. American Home Products Corp., 75 N.Y.2d 196, 200 (N.Y.1990).

In this action, a New York insured seeks to enforce its insurance policy against an insurer with its principle place of business in New York, for coverage based on a cause of action arising within New York's borders. New York could thus make a compelling argument that its policy should be applied. Likewise, Omnicom and H & S are within their rights to argue that Delaware's policy should be applied because the insurance policy was allegedly issued in Delaware. However, where the policy was actually issued is a disputed fact and not for the court to decide on this motion. Accordingly, the court finds that, given the equally important policies of the states, and the conflicting evidence regarding the policy in question, this factor must remain neutral.

3. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

The parties do not dispute that the issue presented in both of the cases is identical. Specifically, the issue is whether ERC is obligated to insure Omnicom and H & S against punitive damages awards. To have courts in two different states each deciding this issue would not be in the interest of sound judicial administration. Nor would such a result be the most expeditious and inexpensive method of determining the parties' rights and liabilities. The parties are already located in New York, both to litigate the pending case in the New York Supreme Court, and to conduct their daily business.

Accordingly, the court finds that this factor weighs heavily in favor of transferring this case to New York.

4. Local Interest in Deciding This Action

Finally, the court finds that Omnicom and H & S have failed to articulate any clear interest that Delaware has in this case. Rather, they briefly allude to the possibility that the insurance contract may have been issued in Delaware. The court finds that this disputed factual issue alone is not enough to conclude that Delaware has a significant interest in this action.

In contrast, New York has a great interest in the outcome of this action. The parties are either New York corporations, or are licensed to do business in New York. Further, the insurance coverage dispute emanates from Jane Doe's original Suffolk County action. As such, the causes of action in the two cases currently at issue arise from alleged wrongful acts in the State of New York.

*5 Thus, this factor also weighs heavily in favor of transferring this case to New York.

IV. CONCLUSION

The court is mindful that there are several factors weighing against transferring this case to New York. However, there are an equal number of factors weighing in favor of transfer that the court finds are deserving of more significant weight. Particularly persuasive are the following facts. Delaware has no clear connection to this case. However, all the parties have significant connections to New York, the underlying action arose in New York, and the identical case is currently pending in a New York court. Thus, the court concludes that the "balance of convenience" tips in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:
1. Employers Reinsurance Corporation's alternative motion to transfer this action to the Southern District of New York (D.I.2) is GRANTED.
2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.
3. Omnicom Group, Inc. and Harrison and Star, Inc.'s Motion For Leave to File a Sur-Reply Brief (D.I.13) is declared MOOT.

2002 WL 109346 (D.Del.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d  
(Cite as: 2002 WL 109346, *5 (D.Del.))

Page 43

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

# EXHIBIT L

Not Reported in F.Supp.2d
(Cite as: 2003 WL 1966438 (D.Del.))

Page 5

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

3COM CORPORATION, Plaintiff,
v.
D-LINK SYSTEMS, INC., Defendant.

No. C.A. 03-014 GMS.

April 25, 2003.

MEMORANDUM AND ORDER

SLEET, J.

I. INTRODUCTION

*1 On January 7, 2003, the plaintiff, 3Com Corporation ("3Com") filed the instant action alleging infringement of three patents relating to network interface adapters. The defendant, D-Link Systems, Inc. ("D-Link"), moves to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I.11). For the following reasons, the court will grant the defendant's motion.

II. DISCUSSION

D-Link moves to transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' Id. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. Id. at 875, 879. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. [FN1] Id. at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." Id. at 879-80 (citations omitted).

> FN1. The first three of these private interest collapse into other portions of the Jumara analysis. The court, therefore, will consider them in the context of the entire inquiry only. See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F.Supp.2d 192 (D Del.1998).

Upon consideration of these factors, the court finds that D-Link has met its burden of demonstrating that transfer is appropriate. First, it is clear that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those at issue in the present action. 28 U.S.C. §§ 1331 and 1338. Further, venue is proper in the Northern District of California because the defendant is a California corporation with its sole place of business in that state. 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides....").

Having determined that the case could be properly heard in the Northern District of California, the court now considers whether it would more conveniently proceed in that forum and whether the interest of justice supports a transfer to that district. Again, the court finds that these criteria are met. First, the court notes that although 3Com is a Delaware corporation, its principal place of business is in Santa Clara, California. D-Link is a California corporation with its sole place of business in Irvine, California. Although some of D-Link's products, including the accused products, are sold in Delaware, the connection to this forum ends there. Neither 3Com nor D-link maintains or owns any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo

facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D-Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

*2 In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, Realtek Semiconductor Corp. ("Realtek") and Via Technologies, Inc. ("Via"). Realtek and Via are Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these parties, while justice, convenience, cost, and expediency favor a forum in California. The court recognizes that the Northern District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. Jumara, 55 F.3d at 879 (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I.11) is GRANTED.

2003 WL 1966438 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Wo